**SO ORDERED.**

**DONE and SIGNED January 14, 2019.**

_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 18-31682 |
| | § | |
| Delta AG Group, LLC | § | |
| | § | Chapter 11 |
| Debtor | § | |

## **Memorandum of Decision**

Before the Court is a motion filed by Richland State Bank (the "**Bank**") seeking the dismissal of this Chapter 11 case or, in the alternative, the lifting of the automatic stay and the appointment of a Chapter 11 trustee. (Doc. 22) Also before the Court is a motion filed by the United States Trustee ("**UST**") seeking the dismissal of this case or, in the alternative, conversion of the case to Chapter 7. (Doc. 31). The two motions

were the subject of a combined trial and the court's findings set forth in this Memorandum of Decision are entered as to both motions.

## I.    <u>Jurisdiction, Venue, Core Status and Authority to Enter Final Order</u>

This Court has jurisdiction over the motions pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper pursuant to 28 U.S.C. § 1408.  All claims presented to this Court are "core" pursuant to 28 U.S.C. § 157 (b)(2)(A), (G) and (O).

This Court has an independent duty to evaluate whether it has the constitutional authority to enter a final order.  The Supreme Court's ruling in *Stern v. Marshall,* 564 U.S. 462 (2011), sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C.,* 735 F.3d 279, 286 (5th Cir.2013) (" 'the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.' ") (quoting *Stern,* 564 U.S. at 499). Thus, under *Stern,* in addition to determining whether each claim is core or non-core, this Court must also determine whether the underlying issue "stems from the bankruptcy itself or it would necessarily be resolved in the claims allowance process." *BP RE,*735 F.3d at 286. Absent both statutory and constitutional authority, this Court may not enter a final order, and instead must issue proposed findings of fact and conclusions of law to be considered by the district court.

The matters at bar require this Court to issue rulings on a motion to dismiss or convert a Chapter 11 case and a motion for relief from the automatic stay, both of

which solely concern federal bankruptcy law. *See* 11 U.S.C. § 1112 (chapter 11 dismissal or conversion); *see also* 11 U.S.C. § 362(d) (relief from the automatic stay). Therefore, there are no *Stern* issues in this case. This Court holds that it has the constitutional and statutory authority to enter a final order or judgment with respect to the matters at bar. *In re Lake Michigan Beach Pottawattamie Resort, LLC*, 547 B.R. 899, 902–03 (Bankr. N.D. Ill. 2016) ("A proceeding for dismissal of a bankruptcy case under section 1112(b) may only arise in a case under title 11 and is a matter in which a bankruptcy judge has constitutional authority to enter a final order.").

## II.  **Findings of Fact**

This Court makes the following findings of fact pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 52 of the Federal Rules of Civil Procedure. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.

The facts, in pertinent part, are as follows:

1.     Delta Ag Group, LLC ("**Debtor**"), a Louisiana limited liability company, was formed in 2008. It has two members, Brad McIntyre and Jo Ann McIntyre (husband and wife), who together hold 100% of the membership interest. Debtor owns a single asset, which consists of 5 to 6 acres in Morehouse Parish, Louisiana, on which rice grain storage bins were built (collectively the "**Property**").

2.     The Bank holds a first priority, multiple indebtedness mortgage on the Property to secure an indebtedness in the approximate amount of $490,000.

3.     On January 31, 2018, the Bank filed a "Petition for Executory Process"

in state court against Debtor and its members styled *Richland State Bank vs. Delta Ag Group, LLC, Brad Allan McIntyre and Jo Ann McIntyre,* 4th Judicial District Court, Morehouse Parish, Louisiana, Suit No. 2018-41 (the "**Foreclosure Action**"). As a result of the Foreclosure Action, the state court issued an Order of Executory Process and a Writ of Seizure and Sale directing the Morehouse Parish Sheriff (the "**Sheriff**") to seize and sell the Property. Debtor Ex. 5.

4.     The Sheriff valued Debtor's property at $1,400,000. Debtor Ex. 4. No party in intertest has disputed this valuation.

5.     A public auction of the Property was scheduled by the Sheriff to commence on April 18, 2018. Debtor Ex. 5. Two (2) days before the scheduled Sheriff's auction, Debtor filed a petition for relief in this Court under Chapter 12 of the Bankruptcy Code on April 16, 2018 (Case No. 18-30619). Debtor Ex. 14. Debtor's Chapter 12 case had the effect of staying the scheduled Sheriff's sale for the Property.

6.     Shortly after the filing of Debtor's Chapter 12 case, the Bank moved to dismiss that case on the grounds that Debtor had not conducted any farming operations in the year prior to the Chapter 12 bankruptcy filing and did not otherwise qualify for relief under Chapter 12. Debtor consented to the dismissal of its Chapter 12 case. Debtor Ex. 6, 7, 8.

7.     Following the dismissal of Debtor's Chapter 12 case, the Sheriff set a new sale date of August 22, 2018. The sale was set with benefit of appraisal, but no bids were received at the first offering in an amount equal to the required two-thirds of the appraised value [$1,400,000], which was $933,333.33. Debtor Ex. 6.

8.    Acting pursuant to Louisiana Code of Civil Procedure article 2336, the Sheriff set a second auction for the Property, but this time without benefit of appraisal and thus without any minimum bid requirement. Debtor Ex. 6. The day before this Sheriff's sale was to occur, Debtor filed a new petition for relief under Chapter 11 of the Bankruptcy Code, which is the case *sub judice*. Debtor Ex. 6, 15.

9.    Debtor experienced financial difficulties beginning in 2014, when its part-owner, Brad McIntyre, was investigated and indicted on federal farm fraud charges.[1] Ricky McIntyre, the father of Brad McIntyre and father-in-law of Jo Ann McIntyre, began making payments on the promissory note to the Bank in 2014 and has made all payments since. Ricky McIntyre is a creditor of the bankruptcy estate and, undisputedly, an insider pursuant to § 101(31)(C)(ii) of the Bankruptcy Code.

10.    Ricky McIntyre is the holder of a multiple indebtedness mortgage encumbering the Property to secure an indebtedness in the approximate amount of $625,000. This mortgage is subordinate to the Bank's mortgage. Debtor Ex. 9.

11.    As part of his criminal sentencing, the District Court imposed a fine or order of restitution on Brad A. McIntyre requiring him to pay restitution in the amount of $4,311,247.00. Thereafter, pursuant to the provisions of 18 U.S.C. § 3613(c), the United States filed a "Notice of Nominee Lien" in the property records of Morehouse Parish to secure payment of the restitution or fine. The Notice of Nominee

---

[1] Brad McIntyre was under investigation by federal authorities in 2014 and he was indicted in 2015. Brad McIntyre was ultimately convicted of the federal farm fraud charges in February of 2018 and is currently incarcerated at the federal prison in Yazoo City, Mississippi. See *United States v. Brad McIntyre*, United States District Court, Western District of Louisiana, Case No. 3:15-CR00218-00.

Lien designates Debtor as constituting the "nominee" of Brad A. McIntyre. By virtue of the Notice of Nominee Lien, Debtor's Property is encumbered by a lien in favor of the United States even though Debtor was not the party ordered to pay the fine or restitution.[2] Essentially, the United States contends that Debtor is or was designated to act on behalf of Brad A. McIntyre. The lien is for the full amount of the restitution ($4,311,247.00), plus penalties equal to 25% of the principal amount for any past due payments which may arise. Debtor Ex. 10.

12.     As a result of the mortgages held by the Bank and Ricky McIntyre and the nominee lien held by the United States, there is no equity in the Property.

13.     It is undisputed that Debtor has no employees or ongoing business operations. While the Debtor has yet to file a plan of reorganization, the testimony elicited at trial revealed that Debtor's rehabilitation plans involve renting out storage space at the grain storage facility to other area farmers. Testimony also revealed that Debtor's plan is to have Ricky McIntyre manage the leasing of the grain storage bins due to his connections in the industry and the fact that he already leases approximately 15,000 acres of cropland near the grain storage facility. According to Ricky McIntyre, it is common for him to lease land to area farmers with the

---

[2] Debtor has expressly reserved the right to challenge the validity of the Notice of Nominee Lien and the allowance of any portion of the claim held by the United States. (Doc. 48, n.1). Presently, however, Debtor has not scheduled the claim of the United States as contingent, disputed or unliquidated. Thus, the claim is presently deemed allowed pursuant to 11 U.S.C. § 1111(a). To date, the United States has not filed a proof of claim, but presumably would do so if Debtor amends its bankruptcy schedules to designate the claim as contingent, disputed or unliquidated. To object to the claim of the United States and to remove the nominee lien, Debtor would need to file an action against the United States pursuant to 28 U.S.C. § 2410 to quiet the title and to object to the claim pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3007.

requirement that they would bring a portion of their crops to the grain storage facility for drying[3] and storage.

14.     At trial, Jo Ann McIntyre candidly admitted to having no experience in operating grain storage facilities.  Ms. McIntyre further admitted that she has no contracts in place for potential lessees at the grain storage facility, and that she is not aware of any licensing or bonding requirement for a grain storage business such as Debtor plans to operate in Louisiana.

15.     Jo Ann McIntyre and Ricky McIntyre were credible witnesses. Notwithstanding this finding, the Court did not find Ricky McIntyre's testimony credible with respect to his projections of Debtor's future financial performance.

## III. <u>Conclusions of Law and Analysis</u>

This Court makes the following conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.

### A. <u>Statutory Framework for Dismissal or Conversion</u>.

Section 1112 of the Bankruptcy Code governs the conversion or dismissal of Chapter 11 cases.  Section 1112 of the Bankruptcy Code provides, in pertinent part:

> **(b)(1)** Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
> **(2)** The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically

---

[3] In its "Business Operating Plan" (Debtor's Exhibit 13), Debtor states that rice grains must be dried to 12.5% moisture before selling.

identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that--

**(A)** there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

**(B)** the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--

**(i)** for which there exists a reasonable justification for the act or omission; and

**(ii)** that will be cured within a reasonable period of time fixed by the court.

**\*\*\***

**(4)** For purposes of this subsection, the term "cause" includes--

**(A)** substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

**(B)** gross mismanagement of the estate;

**(C)** failure to maintain appropriate insurance that poses a risk to the estate or to the public;

11 U.S.C. § 1112(b)(2) and (b)(4)(A)-(C).

Pursuant to § 1112, a party in interest may file a motion to dismiss or convert a chapter 11 case "for cause." Although the Bankruptcy Code does not define "cause," § 1112(b)(4) sets forth numerous examples of "cause" that would support dismissal or conversion. For example, the moving party may establish cause by showing that there is substantial or continuing loss to the estate and the absence of a reasonable likelihood of rehabilitation; gross mismanagement of the estate; failure to maintain insurance that poses a risk to the estate or the public; or unauthorized use of cash collateral that is substantially harmful to a creditor. See, § 1112(b)(4). In addition to the codified examples of "cause," it is well established in the Fifth Circuit that a Chapter 11 case is subject to dismissal or conversion for "cause" under § 1112(b) if it was not filed in good faith. *Little Creek Dev. Co. v. Commonweatlh Mortgage Corp. (In*

*re Little Creek Dev. Co.),* 779 F.2d 1068, 1072 (5th Cir.1986) ("Findings of lack of good faith in proceedings based on ... § 1112(b) have been predicated on certain recurring but non-exclusive patterns...."); *In re Humble Place Joint Venture*, 936 F.2d 814, 817 (5th Cir. 1991) ("Because *Little Creek* explicitly treated the question of good faith dismissals under § 1112, the case settles any statutory or constitutional question about that procedure."). In the Fifth Circuit, a determination of "cause" requires a consideration of the totality of circumstances. *Matter of T–H New Orleans L.P.,* 116 F.3d 790 (5th Cir.1997) ("The requirement of good faith must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan…").

When determining whether to dismiss or convert a case under § 1112, a court is required to apply a burden shifting analysis. *In re Aurora Memory Care, LLC*, 589 B.R. 631, 637 (Bankr. N.D. Ill. 2018) ("The amended section 1112(b) also introduced a burden-shifting scheme under which the debtor can resist an otherwise mandatory conversion or dismissal."). Under that analysis, the moving party bears the initial burden to establish "cause" by a preponderance of the evidence. *In re Woodbrook Assocs.,* 19 F.3d 312, 317 (7th Cir.1994). Once the movant shows "cause," the burden shifts to the debtor to establish the exceptions in § 1112(b)(2). *In re Briggs-Cockerham, L.L.C.*, No. 10-34222-BJH-11, 2010 WL 4866874, at *3 (Bankr. N.D. Tex. Nov. 23, 2010) ("Thus, the statutory framework establishes that the initial burden to establish 'cause' lies with the [moving party], and if the [moving party] establishes 'cause,' then the burden shifts to the [non-moving party] to establish the 'unusual circumstances' exception to mandatory dismissal.").

If the movant establishes "cause" and the non-movant fails to meet its burden of proving the statutory exceptions under § 1112(b)(2), dismissal or conversion is mandatory, *unless* the court determines the appointment of a chapter 11 trustee or an examiner is in the best interests of creditors and the estate. See, § 1112(b)(1).

**B. <u>Motions to Dismiss or Convert</u>**.

In this case, the Bank and UST filed separate motions to dismiss or convert. Both parties argue that "cause" exists, although they rely upon different statutory factors, *viz*.: (1) "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," as set forth in § 1112(b)(4)(A); (2) "gross mismanagement of the estate," as set forth in § 1112(b)(4)(B); and (3) "failure to maintain appropriate insurance that poses a risk to the estate or to the public" as set forth in § 1112(b)(4)(C). In addition, the Bank relies upon an uncodified factor – that Debtor's bankruptcy case should be dismissed for "cause" because it was filed in bad faith. In support of its argument, the Bank asserts that: (i) there was no legitimate purpose for the bankruptcy filing, since there is no going concern, (ii) Debtor has no operations, (iii) Debtor has only one asset; and (iv) the filing of the bankruptcy was designed primarily to delay the Bank's ability to seize its collateral. *Motion to Dismiss,* [Doc. 22, p.1].

**1. <u>The Bank Failed to Meet its Burden to Prove Substantial or Continuing Loss to or Diminution of the Estate - Section 1112(b)(4)(A)</u>**.

The Bank argues that "cause" exists to dismiss this case pursuant to § 1112(b)(4)(A) because the evidence demonstrates there is both (1) a substantial or

continuing loss to or diminution of the estate *and* (2) the absence of a reasonable likelihood of rehabilitation. To demonstrate "cause" pursuant to § 1112(b)(4)(A), the loss may be either substantial or continuing, but it need not be both. *In re Creekside Sr. Apartments, L.P.,* 489 B.R. 51, 61 (6th Cir. BAP 2013) (citing 7 **Collier on Bankruptcy** ¶ 1112.04[6][a][i] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("By the use of the word 'substantial' in section 1112(b)(4)(A), Congress has indicated that a loss need not be continuing in order to satisfy the first prong of this enumerated cause"). If the loss is sufficiently large given the financial circumstances of the debtor as to materially negatively impact the bankruptcy estate and interest of creditors, the loss is substantial. 7 **Collier on Bankruptcy** ¶ 1112.04[6][a][i] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). For purposes of § 1112(b)(4)(A), "cause" can be shown by demonstrating that the debtor suffered or has continued to experience a negative cash flow or declining asset values following the order for relief. *In re Paterno,* 511 B.R. 62, 66 (Bankr.M.D.N.C.2014).

In this case, the evidence is insufficient to support a finding under § 1112(b)(4)(A) that Debtor's estate suffered *any* post-petition loss, much less a "substantial" or "continuing" post-petition loss. In fact, the monthly operating reports confirm that Debtor has not expended any money post-petition. Doc. 39. Although the evidence establishes that no repairs have been made to, or maintenance completed on, Debtor's property, those facts are insufficient to establish that Debtor's estate suffered a substantial or continuing loss considering the totality of Debtor's financial circumstances or that there has been a material negative impact on the

bankruptcy estate or the interests of creditors. The evidence is also insufficient to prove that property of the estate has suffered, or will likely suffer, from declining asset values during the pendency of this bankruptcy case.

### 2. **The Bank Failed to Meet its Burden to Prove Gross Mismanagement of the Estate - Section 1112(b)(4)(B).**

Although the Bank argues there has been gross mismanagement of the estate, the Court concludes it failed to establish this ground within the meaning of 11 U.S.C. § 1112(b)(4)(B). The Bank has pointed to *nothing* that has occurred during this case that allegedly constitutes gross mismanagement of the estate, aside from the failure to conduct unspecified maintenance of property of the estate and the failure to maintain obtain a license to conduct *future* business operations. Those facts are simply insufficient to support a finding of gross mismanagement.

### 3. **The Bank and UST Proved Debtor Failed to Maintain Appropriate Insurance that Poses a Risk to the Estate or to the Public - Section 1112(b)(4)(C).**

The Bank and UST each urge this Court to dismiss this case due to Debtor's failure to obtain appropriate insurance. Pursuant to § 1112(b)(4)(C), a Chapter 11 case can be dismissed or converted if the debtor's "failure to maintain appropriate insurance ... poses a risk to the estate or to the public." When a debtor owns real property with structures, such as Debtor's grain storage bins, § 1112(b)(4)(C) requires that the debtor maintain casualty and liability insurance to protect the estate and the public. *Gilroy v. Ameriquest Mortgage Co., et al.,* No. NH 07–054, 2008 WL 4531982 (1st Cir. BAP Aug. 4, 2008) (failure to maintain property and liability

insurance for five condominiums constitutes cause for dismissal); *Derivium Capital LLC v. U.S. Trustee*, No. 5 Civ. 10845, 2006 WL 1317021, *11 (S.D.N.Y. May 12, 2006) (affirming the bankruptcy court's decision to convert a chapter 11 case partially because the debtor lacked proper insurance coverage); *In re Van Eck*, 425 B.R. 54, 60-61 (Bankr. D. Conn. 2010) (finding that cause existed in part, because the debtor failed to show that there was insurance on residential property he owed.).

In this case, there is no dispute that Debtor failed to acquire appropriate insurance for its Property. Without insurance, Debtor is unable to mitigate the inherent risks to the estate and the public arising from its proposed operation of grain storage bins. It is well established that the operation of grain storage bins present risks of known and unknown dangers to the public. *See*, for example, *Jentz v. ConAgra Foods, Inc.*, 767 F.3d 688, 690 (7th Cir. 2014) ("Explosions are a constant risk in grain storage, which produces not only a lot of combustible dust and carbon monoxide - which can oxidize explosively to carbon dioxide - but also, through the decay of a bin's contents, heat that can set off a blast.").

Based on the lack of insurance, the Court finds that there exists sufficient "cause" for the dismissal or conversion of this Chapter 11 case under § 1112(b)(4)(C).

### 4. <u>Debtor Failed to Meet Its Burden to Prove a Defense under Section 1112(b)(2).</u>

Because the Bank and UST have unquestionably demonstrated "cause" under § 1112(b)(4)(C), conversion or dismissal is mandatory *unless* Debtor can meet its burden to establish the exceptions in § 1112(b)(2), or the Court determines the appointment of a chapter 11 trustee or an examiner is in the best interests of creditors

and the estate.  See, § 1112(b)(1).

To establish the statutory exceptions under § 1112(b), a debtor or non-moving party must satisfy two prongs.  First, the non-moving party must specifically identify "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." § 1112(b)(2); *See also*, *In re Triumph Christian Ctr., Inc.*, 493 B.R. 479, 496 (Bankr. S.D. Tex. 2013) ("Debtor has failed to meet its burden of demonstrating that "unusual circumstances" exist such that dismissal is not in the best interests of the creditors and the estate.").  The Code does not define "unusual circumstances," but the phrase "contemplates conditions that are not common in most chapter 11 cases." *Id.*  See also, 7 ***Collier on Bankruptcy*** ¶ 1112.05 [2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  Second, the non-moving party must prove *all* of the following: (1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time, (2) the "cause" for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; (3) there is reasonable justification or excuse for a debtor's act or omission; and (4) the act or omission will be cured within a reasonable time. See, § 1112(b)(2).

Although Debtor provided sufficient evidence to prove that there was a reasonable justification for its failure to obtain insurance (thereby satisfying § 1112(b)(2)(B)(i)), it failed to prove any of the other portions of the two prong test.  Specifically, Debtor failed to satisfy its burden to prove (i) a reasonable likelihood of a plan being confirmed as required by § 1112(b)(2)(A) and (ii) curing the deficiency

within a time period fixed by the court as required by § 1112(b)(2)(B)(ii). Moreover, Debtor failed to prove the existence of any "unusual circumstances" which would preclude the dismissal or conversion of this case. § 1112(b)(2).

### a. <u>Debtor failed to prove the "unusual circumstances" exception to dismissal - § 1112(b)(2).</u>

Debtor failed to satisfy the first prong of the § 1112(b)(2) defense in that it failed to prove and identify "unusual circumstances" that establish that the appointment of a trustee, dismissal or conversion would not be in the best interest of creditors and the estate. This case involves no "conditions that are not common in most chapter 11 cases." *Aurora Memory Care,* 589 B.R. at 642. The circumstances here are, in fact, all too common, and are the kind "encountered by the typical debtor operating in a Chapter 11 proceeding," *Id.*: a debtor failing to obtain insurance necessary to protect the estate and the public. Nothing about the case suggests that the Bankruptcy Code's purposes would be "better served by maintaining the case" in Chapter 11. 7 ***Collier on Bankruptcy*** ¶ 1112.04 [3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) "If this case has something unusual about it justifying its continuation in chapter 11, it was up to [Debtor] to say so." *Aurora Memory Care,* 589 B.R. at 642. Debtor failed to satisfy its burden.

Bankruptcy courts have significant discretion in making the determination as to whether there are unusual circumstances that should prevent dismissal. *In re 1031 Tax Group, LLC,* 374 B.R. 78, 93 (Bankr.S.D.N.Y.2007) (section 1112(b) "explicitly provides for this discretion where a court is able to identify 'unusual circumstances

... that establish that the requested conversion is not or dismissal is not in the best interests of creditors and the estate'")'. In this case, for the reasons set forth above, this Court concludes that the record does not establish that this case has experienced "conditions that are not common in chapter 11 cases," or that this case is unusual among bankruptcies.

### b. **Debtor failed to prove a reasonable likelihood of a plan being confirmed - § 1112(b)(2)(A).**

In addition to failing to identify unusual circumstances that indicate that conversion is not in the best interests of creditors and the estate, the Debtor also failed to establish that it is likely that a plan will be confirmed within a reasonable period of time as required by § 1112(b)(2)(A).

In the early stages of a Chapter 11 case, the prospects for confirming a plan are not evaluated as stringently as they are later on. *In re Sterling WH Co., LLC*, 475 B.R. 481, 485 (Bankr. E.D. Va. 2012) ("The standard in § 1112(b)(2)(A) is lower than the confirmation standard in § 1129. Section 1112(b)(2)(A) only requires that there be a reasonable likelihood that a plan will be confirmed. It is not a confirmation hearing. It is an evaluation of the likelihood of achieving confirmation."). Nevertheless, a debtor facing a motion under § 1112(b) must still show that a reorganization is plausible and not "a mere financial pipe dream." *In re Ramreddy, Inc.*, 440 B.R. 103, 114 (Bankr. E.D. Pa. 2009)("when the movant's evidence raises a bona fide question whether there is a reasonable likelihood of a successful reorganization, the debtor must make some record to support the conclusion that the

proposed reorganization has some plausibility and is not a mere financial pipe dream."). In this case, this Court concludes that Debtor's prospect for confirming a plan is nothing more than a financial pipe dream.

To confirm a plan, the court must be satisfied that there has been compliance with all of the requirements of confirmation set forth in § 1129 of the Bankruptcy Code, even in the absence of any objections. In order to confirm the plan, the court must find, among other things, that: (1) the plan is feasible; (2) it is proposed in good faith; and (3) the plan and the proponent of the plan are in compliance with the Bankruptcy Code. In order to satisfy the feasibility requirement, the court must find that confirmation of the plan is not likely to be followed by liquidation (unless the plan is a liquidating plan) or the need for further financial reorganization.

In this case, Debtor failed to establish a reasonable likelihood that a plan will be confirmed because (1) it failed to substantiate the feasibility of any plan for this Debtor as required by 11 U.S.C. § 1129(a)(11); and (2) it failed to establish that any proposed plan would likely be accepted by at least one class of non-insiders who hold impaired claims (i.e., claims that are not going to be paid completely or in which some legal, equitable, or contractual right is altered), as required by § 1129(a)(10).

### i. Plan Feasibility

To confirm a plan of reorganization, a bankruptcy court must determine whether a proposed plan of reorganization is feasible. 11 U.S.C. § 1129(a)(11). The feasibility test requires a bankruptcy court to determine whether the plan is workable and has a reasonable likelihood of success. *Fin. Sec. Assurance Inc. v. T–H New*

*Orleans Ltd., P'ship (In re T–H New Orleans Ltd. P'ship),* 116 F.3d 790, 801 (5th Cir.1997). The Fifth Circuit has provided that "the [bankruptcy] court need not require a guarantee of success ..., [o]nly a reasonable assurance of commercial viability is required. All the bankruptcy court must find is that the plan offer 'a reasonable probability of success.'" *Id.* To establish the feasibility of a plan, the debtor must present proof through reasonable projections that there will be sufficient cash flow to fund the plan. Such projections cannot be speculative, conjectural or unrealistic. A plan proponent, however, need only demonstrate that there exists a reasonable probability that the plan provisions can be performed. *Id.* "However, just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility." *In re Cajun Elec. Power Coop., Inc.,* 230 B.R. 715, 745 (Bankr.M.D.La.1999). The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required. *Id.*

Even under a relaxed standard of determining whether a yet-to-be-proposed plan is confirmable, to establish its defense under § 1112(b)(2), Debtor has a duty to come forward with credible evidence to prove that it can propose and confirm a plan that meets the feasibility test required by § 1129(a)(11). In this case, the feasibility test is a tall hurdle for the Debtor to overcome because it did not engage in any pre-petition income producing business. Therefore, it does not have any historical records to show past income and expenses. Other than presenting a bare-bones two (2) page document showing projected annual income and expenses based upon optimistic

assumptions of Debtor's future business opportunities [Debtor Ex. 13], Debtor failed to present any credible projections of its financial performance for any time period likely to be covered by a plan. Based on the record, there is no way for this Court to determine if Debtor will have sufficient means to meet all of its obligations under any plan, including without limitation, obligations arising under or in connection with the loan from the Bank. The record lacks the required evidence for this Court to determine if Debtor will emerge from bankruptcy as a viable, financially healthy business enterprise, unlikely to be in need of further financial reorganization.

Based on the lack of credible evidence regarding the projected income that the Debtor would need to fund any proposed plan and projected expenses, this Court finds that the Debtor did not present sufficient evidence to demonstrate the feasibility of any Chapter 11 plan. *Tennessee Publishing Co. v. American Nat'l Bank,* 299 U.S. 18, 22, 57 S.Ct. 85, 81 L.Ed. 13 (1936) ("However honest in its efforts the debtor may be, and however sincere its motives, the ... Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation."); *In re Sparkle Stor–All Eaton Tp., LLC,* Bky. No. 11–30382, 2011 WL 4542709 (Bankr.N.D.Ohio Sept. 28, 2011) (finding that non-moving party did not meet § 1112(b)(2) burden because it failed to make a showing that a proposed plan would be feasible); *Fidelity Deposit & Discount Bank v. Domiano (In re Domiano),* 442 B.R. 97, 107 (Bankr.M.D.Pa.2010) (finding that failure to produce evidence substantiating source of funding for a plan evidenced the nonmoving party's failure to meet § 1112(b)(2)(A) burden); *In re Ramreddy, Inc.,* 440 B.R. 103, 114–15 (Bankr.E.D.Pa.2009) (finding that when a plan is dependent on

outside financing a debtor must submit concrete evidence substantiating its efforts to obtain financing to meet its § 1112(b)(2)(B) burden).

### ii. No evidence of accepting class of non-insider impaired creditors.

In addition to failing to substantiate the feasibility of any plan that it could possibly propose, Debtor failed to provide any evidence to demonstrate that there is a likelihood that any class of impaired non-insider creditors will cast a ballot accepting the proposed plan, as required by § 1129(a)(10). The universe of creditors in this case is extremely small as its consists solely of three (3) non-insider creditors, *viz.* (1) the Bank which holds a first priority mortgage on Debtor's property to secure a debt of approximately $490,000; (2) the Sheriff, in his official capacity as the collector of real property taxes for Morehouse Parish, who holds a small unsecured priority claim of approximately $5,900 for 2017 property taxes; and (3) the United States as the holder of a "nominee lien" to secure the payment of a fine or an order of restitution in the approximate amount of $4,300,000. At trial, the Bank's counsel advised that the Bank would adamantly oppose any plan proposed by Debtor. That leaves only two (2) non-insider creditors eligible to cast a ballot in favor of the plan. Absent a ballot accepting the plan by either the United States or the Sheriff, any plan proposed by Debtor is dead on arrival. This dynamic does not support a finding that there is a reasonable likelihood that a plan could be confirmed within a reasonable time especially considering that the United States and the Sheriff have not: (1) participated in this case, (2) filed a proof of claim, (3) filed a notice of appearance, or (4) filed an objection to the pending motions to dismiss. Moreover, Debtor's express

reservation of its right to object to the entirety of the claim held by the United States for approximately $4,300,000 makes the possibility of the United States casting a ballot even more unlikely than the typical case. In this Court's experience, governmental units rarely cast ballots accepting a plan.

Although it is possible that the Sheriff and the United States may cast ballots in favor of a plan, Debtor failed to come forward with ***evidence*** to meet its burden under § 1112(b)(2) to establish a reasonable likelihood of achieving confirmation with the support of any impaired creditor.

This Court's finding of Debtor's inability to confirm a plan for lack of an accepting impaired class is similar to findings made by other courts invoking § 1112(b) to dismiss a case prior to confirmation. For example, one court found that "cause" under § 1112(b) existed where a single creditor held ninety-nine percent of the amount of unsecured claims, the debtor proposed to impaired his claim under a plan, and he stated his intention not to vote for it, thereby making it impossible to confirm a plan. *In re Babayoff*, 445 B.R. 64, 76–77 (Bankr. E.D.N.Y. 2011). Similarly, another court found that cause under § 1112(b) was present where a single creditor held seventy-eight percent of the unsecured debt and objected to the plan because his claim was impaired, so that confirmation of a plan was impossible. *In re Local Union 722 Int'l Bhd. of Teamsters,* 414 B.R. 443, 453 (Bankr.N.D.Ill.2009). Another court found cause under § 1112(b) present where plan confirmation was impossible over objection of creditor who controlled over one-third of a class. *See In re B & B West 164th Street Corp.,* 147 B.R. 832, 842 (Bankr.E.D.N.Y.1992).

## c. **Debtor failed to prove that it can obtain insurance within a reasonable period of time fixed by this Court - § 1112(b)(2)(B)(ii).**

Although Debtor proved, as required by § 1112(b)(2)(B)(i), there is a "reasonable justification for the act or omission" that forms the basis of the motion to dismiss (in this case, the failure to provide insurance), Debtor failed to prove that it can remedy this default within a reasonable period of time. Curing a default within a reasonable period of time is an additional requirement, set forth in § 1112(b)(2)(B)(ii), independent of the requirement in § 1112(b)(2)(B)(i) of "reasonable justification." There is simply no evidence in the record to support the notion that Debtor will be able to obtain insurance if it is given additional time by this Court, other than the sheer hope or optimism expressed by Debtor's management. Debtor has not satisfied its burden.

## 5. **Other grounds for Dismissal need not be addressed**.

Because the Bank and UST established "cause" to dismiss or convert under § 1112(b)(4)(C) and Debtor failed to establish a defense under § 1112(b)(2), the Bank's attempt to dismiss this case due to lack of good faith need not be discussed. The sole remaining issue is whether this case must either be converted or dismissed.

## 6. **Conversion or Dismissal**

The Court concludes that dismissal is preferable to conversion. *See In re Del Monico*, No. 04 B 28235, 2005 WL 1129774, at *3 (Bankr. N.D. Ill. May 13, 2005) (noting that the court can choose to take either course no matter which one the movant has sought). Whether a chapter 11 case should be dismissed or converted

depends on what is "in the best interest of creditors and the estate." § 1112(b)(1).

The best interest of the estate turns on whether its economic value is greater in or out of bankruptcy. In determining whether conversion or dismissal is appropriate, a court should consider what assets would be available for a chapter 7 trustee to liquidate and administer for the benefit of unsecured creditors if the case were converted. When the estate has no assets with equity that a trustee could liquidate to pay unsecured creditors, dismissal is in the best interests of creditors and the estate. When there are estate assets with equity, conversion is the better course.

In this case, considering the totality of the circumstances, the Court believes that dismissal is in the best interests of the estate and the creditors, especially considering that there is no equity in Debtor's Property.

## IV. <u>Conclusion</u>

Although this Court is reluctant to dismiss any Chapter 11 case before a debtor is given the opportunity to propose a plan, the Court is required to apply the burden-shifting analysis set forth § 1112(b)(2). Applying that analysis, this Court concludes the Bank met its initial burden to establish "cause" for dismissal or conversion pursuant to § 1112(b)(4)(C) (failure to maintain appropriate insurance). Therefore, the burden shifted to Debtor to prove this case should not be dismissed or converted by proving each element set forth in § 1112(b)(2). Debtor failed to establish its burden of proof required by § 1112(b)(2) as it failed to prove: (i) the existence of specific unusual circumstances that establish that the appointment of a trustee, dismissal or conversion would not be in the best interest of creditors and the estate; (ii) there is a

reasonable likelihood of a Chapter 11 plan being confirmed within a reasonable time; and (iii) the cause for dismissal or conversion can be cured within any reasonable period of time fixed by this Court.

Considering the totality of the circumstances, the Court determines the appointment of a Chapter 11 trustee or an examiner is *not* in the best interests of creditors and the estate. See, § 1112(b)(1). Instead, the Court determines it is in the best interests of the estate and its creditors to **DISMISS** this case.

The Court will issue an Order consistent with this Memorandum of Decision.

###